UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT PURRINGTON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LAKELAND INDUSTRIES, INC., JAMES M. JENKINS, CHARLES D. ROBERSON, and ROGER D. SHANNON,<br><br>Defendants. | Case No.  1:26-cv-01501-DLC |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ROBERT PURRINGTON FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION
OF LEAD COUNSEL

## TABLE OF CONTENTS

PRELIMINARY STATEMENT................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT .......................................................................................................................... 7

     I.     PURRINGTON SHOULD BE APPOINTED LEAD PLAINTIFF ........................ 7

          A.     Purrington Is Willing to Serve as Class Representative.............................. 8

          B.     Purrington Has the "Largest Financial Interest"........................................ 8

          C.     Purrington Otherwise Satisfies Rule 23's Requirements ........................... 9

          D.     Purrington Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses ............................... 12

     II.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED.................................................................................................. 13

CONCLUSION...................................................................................................................... 14

CERTIFICATE OF WORD COUNT..................................................................................... 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) .................................10

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
141 F.R.D. 229 (S.D.N.Y. 1992) ........................................................................................11

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018)............................9

*Dookeran v. Xunlei Ltd.*,
No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) ......................................11

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ........................................................................................11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)....................................................................................................9

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..............9, 13, 14

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)....................................................................................................10

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) ...............................................................................................13

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) .........................................................................................9

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ....................................10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ..............................................................................................10

*In re Petrobras Securities Litigation*,
No. 14-cv-09662 (S.D.N.Y.)....................................................................................................13

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 112 (S.D.N.Y. 2010) ............................................................................................11

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) .......................................................................................10

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ....................................................................................13

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ...........................................9

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
    No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) .......................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .....................................................................................9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)..............................................................................13

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ................................................ *passim*

Securities Exchange Act of 1934.............................................................................1, 9, 11

**Rules**

Fed. R. Civ. P. 23.................................................................................................. *passim*

Robert Purrington ("Purrington") respectfully submits this memorandum of law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Purrington as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired Lakeland Industries, Inc. ("Lakeland" or the "Company") securities between December 1, 2023 and December 9, 2025, both dates inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that the Defendants defrauded investors in violation of the Exchange Act. Lakeland investors, including Purrington, incurred losses following the disclosures of the Defendants' alleged fraud, which caused Lakeland's share price to fall sharply, damaging Purrington and other Lakeland investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Purrington: (1) purchased 4.72364 shares of Lakeland common stock; (2) purchased 4.72364 net shares of Lakeland common stock; (3) expended $81.00 in net funds on Lakeland common stock; and (4) as a result of the disclosures of the Defendants' alleged fraud, incurred losses of approximately $38.00. *See* Declaration of J. Alexander Hood II

1

in Support of Motion ("Hood Decl."), Exhibit ("Ex.") A;[1] Dkt. Nos. 1-1, 1-2.  Purrington believes that he has the largest financial interest in the relief sought in this litigation.  In addition to his financial interest, Purrington also meets the applicable requirements of Rule 23 because his claims are typical of those of absent Class members and he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute this Action on behalf of the Class, Purrington has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Purrington respectfully requests that the Court enter an order appointing him as Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint in the Action, Lakeland, together with its subsidiaries, manufactures and sells industrial protective clothing and accessories for the industrial and public protective clothing market worldwide.  The Company employs a so-called "small, strategic, and quick" ("SSQ") mergers and acquisitions ("M&A") strategy to purportedly drive its growth in revenue and profitability.

At the end of November 2023, Lakeland announced its acquisition of New Zealand-based Pacific Helmets NZ Limited ("Pacific Helmets"), a purported leading designer and manufacturer

---

[1] The shares purchased and net shares purchased figures appearing in the Ex. A to the Hood Decl. are rounded to the nearest integer.

of helmets for the firefighting, wildland firefighting, and rescue markets. Defendants touted Pacific Helmets' purported "premium solutions" and said that the Company's acquisition of it enhanced Lakeland's product portfolio.

In February 2024, Lakeland announced its acquisition of the related companies Jolly Scarpe S.p.A. (based in Italy) and Jolly Scarpe Romania S.R.L. (collectively, "Jolly"), a purported leading designer and manufacturer of professional footwear for the firefighting, military, police, and rescue markets. Defendants touted this acquisition as another significant milestone in Lakeland's expansion efforts, as well as Jolly's purported strong brand with a well-established reputation for quality and innovative design and manufacturing.

At all relevant times, Defendants represented that Lakeland would realize significant benefits from the foregoing acquisitions in both the near and long term, while touting the Company's overall SSQ M&A strategy. Moreover, following the onset of tariff-related market uncertainties in 2025, Defendants consistently represented that the Company was well positioned to weather tariff-related headwinds while continuing to pursue its SSQ M&A strategy. Indeed, throughout the Class Period, notwithstanding tariff-related headwinds, Defendants made repeated assurances regarding their visibility into Lakeland's future performance in upcoming quarters, consistently expressing confidence in their financial guidance issued to investors.

For example, in July 2024, Defendants represented that, for Lakeland's fiscal year ("FY") 2025,[2] they expected, *inter alia*, adjusted EBITDA,[3] excluding any material negative impact from foreign exchange ("FX"), to be in the range of $18 million to $21.5 million, and repeatedly

---

[2] Lakeland's FY ends on January 31.

[3] "EBITDA" refers to earnings before interest, taxes, depreciation, and amortization.

reaffirmed that they expected the Company to achieve adjusted EBITDA of at least $18 million in FY 2025 thereafter.

Similarly, in April 2025, Defendants represented that, for Lakeland's FY 2026, they expected revenue of $210 to $220 million and adjusted EBITDA, excluding any material negative impact from FX, of $24 to $29 million. Defendants indicated that, notwithstanding tariff-related uncertainties, they had visibility into Lakeland's future performance by virtue of various purported positive market signals they observed and their widely touted tariff mitigation measures.

Throughout the Class Period, Defendants made materially false and misleading statements regarding Lakeland's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lakeland was experiencing significant, sustained issues with its Pacific Helmets and Jolly businesses, including, *inter alia*, shipping-related delays, production issues, and slower than expected rollout of new products; (ii) accordingly, Defendants overstated the anticipated and actual positive impact of these businesses on Lakeland's financial results, as well as the overall strength and quality of Pacific Helmets' and Jolly's respective operations; (iii) Lakeland's business and financial results were significantly deteriorating because of, *inter alia*, tariff-related headwinds and timing, certification delays, and material flow issues in its acquired businesses; (iv) accordingly, Defendants overstated the strength of their tariff mitigation measures and SSQ M&A strategy; (v) as a result of all the foregoing issues, Defendants' financial guidance was unreliable; and (vi) as a result, Defendants' public statements were materially false and misleading at all relevant times.

The truth began to emerge on September 4, 2024, when, during post-market hours, Lakeland issued a press release reporting its financial results for the second quarter ("Q2") of its FY 2025. Among other results, Lakeland reported revenue of $38.51 million for the quarter,

4

missing consensus estimates by $1.39 million.  Defendant James M. Jenkins ("Jenkins"), the Company's President, Chief Executive Officer, and Executive Chairman, revealed "the shortfall was due to shipment timing," and that, *inter alia*, Jolly had "substantial fire orders delayed to the late third and early fourth quarter."

On this news, Lakeland's stock price fell $1.86 per share, or 7.82%, to close at $21.92 per share on September 5, 2024.

On April 9, 2025, during post-market hours, Lakeland issued a press release reporting its financial results for its fourth quarter ("Q4") and FY of 2025.  Among other results, Lakeland reported Q4 GAAP[4] earnings per share ("EPS") of -$2.42, missing consensus estimates by $2.80, and FY 2025 adjusted EBITDA, excluding FX losses, of only $17.4 million—significantly below Defendants' repeatedly reiterated guidance of EBITDA of at least $18 million.  Defendant Jenkins blamed these disappointing results on, *inter alia*, "a large Jolly fire boots order that was initially expected to ship in Q2 of FY25 [that] has now slipped into FY26," "weakness . . . at Pacific Helmets resulting from production issues and product offering updates[,]" and "slower than expected" "rollout of new products from Pacific Helmets and Jolly Boots[.]"

On this news, Lakeland's stock price fell $2.63 per share, or 14.33%, to close at $15.72 per share on April 10, 2025.

Then, on June 9, 2025, during post-market hours, Lakeland issued a press release reporting its financial results for the first quarter ("Q1") of its FY 2026.  Among other results, Lakeland reported Q1 GAAP EPS of -$0.41, missing consensus estimates by $0.60, as well as revenue of $46.74 million, missing consensus estimates by $2.1 million.  Defendant Jenkins blamed these disappointing results on, *inter alia*, Lakeland's Pacific Helmets business "resulting from

---

[4] "GAAP" refers to generally accepted accounting principles.

production issues and updates to product offerings[,]" as well as "shipment timing" and "tariff-related delays[.]"  Defendant Roger D. Shannon ("Shannon"), Lakeland's Chief Financial Officer, attributed the shortfall in adjusted EBITDA in the quarter to, *inter alia*, "elevated freight costs resulting from tariff-related inventory build, and dilution from acquisitions."

On this news, Lakeland's stock price fell $4.29 per share, or 22.16%, to close at $15.07 per share on June 10, 2025.

On September 9, 2025, during post-market hours, Lakeland issued a press release reporting its financial results for Q2 of its FY 2026.  Among other results, Lakeland reported revenue of $52.5 million for the quarter, missing consensus estimates by $2.09 million.  Defendant Jenkins once again blamed these disappointing results on, *inter alia*, "Pacific Helmets resulting from updates to product offerings and production issues[,]" as well as "continued delays in purchasing decisions due to tariff uncertainty[.]"

On this news, Lakeland's stock price fell $0.64 per share, or 4.43%, to close at $13.80 per share on September 10, 2025.

Then, on December 9, 2025, during post-market hours, Lakeland issued a press release reporting its financial results for the third quarter ("Q3") of its FY 2026.  Among other results, Lakeland reported Q3 2026 GAAP EPS of -$1.64, missing consensus estimates by $1.93, and revenue of $47.6 million, missing consensus estimates by $9.05 million, blaming, *inter alia*, "timing, certification delays, and material flow issues" in its acquired businesses, as well as tariff-related headwinds.  The press release further revealed that Lakeland was withdrawing its previously issued financial guidance for FY 2026 and would not provide financial guidance going forward because the foregoing "challenges have affected our forecasting ability[.]"

The same day, also during post-market hours, Lakeland filed a current report on Form 8-K with the U.S. Securities and Exchange Commission, disclosing that Defendant Shannon's employment had been terminated.

Following these disclosures, Lakeland's stock price fell $5.85 per share, or 38.97%, to close at $9.16 per share on December 10, 2025.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Purrington and other Class members have suffered losses and damages.

## ARGUMENT

### I.    PURRINGTON SHOULD BE APPOINTED LEAD PLAINTIFF

Purrington should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this litigation to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice, and to do so by the later of (1) 90 days after the date of publication or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B)(i)–(ii).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Purrington satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### A.     Purrington Is Willing to Serve as Class Representative

On February 23, 2026, counsel for the plaintiff in the Action caused the statutorily required Notice to be published via *ACCESS Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Lakeland and other defendants, and advising investors in Lakeland securities that they had until April 24, 2026—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as Lead Plaintiff.  *See* Dkt. No. 7-1.

Purrington has filed the instant motion pursuant to the Notice, and he has submitted a sworn Certification attesting that he is willing to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary.  *See* Dkt. Nos. 1-1, 1-2.  Accordingly, Purrington satisfies the first requirement to serve as Lead Plaintiff of the Class.

### B.     Purrington Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class[.]"  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  To the best of his knowledge, Purrington has the largest financial interest of any Lakeland investor or investor group seeking to

serve as Lead Plaintiff.  For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).  In accord with other courts nationwide,[5] these so-called *Lax* factors have been adopted and routinely applied by courts in this District.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004).

During the Class Period, Purrington: (1) purchased 4.72364 shares of Lakeland common stock; (2) purchased 4.72364 net shares of Lakeland common stock; (3) expended $81.00 in net funds on Lakeland common stock; and (4) as a result of the disclosures of the Defendants' alleged fraud, incurred losses of approximately $38.00.  *See* Hood Decl., Ex. A.  As such, Purrington believes that he possesses the largest financial interest in the outcome of this litigation within the meaning of the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

C.      **Purrington Otherwise Satisfies Rule 23's Requirements**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule

---

[5] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). In addition, "[t]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998). Moreover, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Purrington.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other

class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Purrington's claims are typical of those of the Class.  Purrington alleges, like other Class members, that the Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Lakeland, or by omitting to state material facts necessary to make the statements they did make not misleading. Purrington, like other Class members, purchased Lakeland securities during the Class Period at prices alleged to have been artificially inflated by the Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Lakeland's stock price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

Purrington is an adequate representative for the Class.  As set forth in greater detail below, in Pomerantz, Purrington has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  There

11

is no evidence of antagonism or conflict between Purrington's interests and those of the Class. Moreover, Purrington has submitted a sworn Certification declaring his commitment to protecting the interests of the Class (*see* Dkt. Nos. 1-1, 1-2), and his financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.

Further demonstrating his adequacy, Purrington has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See id.*, Ex. B.

**D.      Purrington Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses**

The presumption favoring Purrington's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)     will not fairly and adequately protect the interests of the class; or

(bb)     is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Purrington's ability and desire to fairly and adequately represent the Class has been discussed above.  Purrington is not aware of any unique defenses the Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Purrington should be appointed Lead Plaintiff for the Class.

12

## II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v).  The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class" (*id.* § 78u-4(a)(3)(B)(iii)(II)(aa)).  *See Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

Here, Purrington has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith.  *See* Hood Decl., Ex. C.  In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel.  *See id.*  For more than 85 years, Pomerantz has represented defrauded investors.  *See id.*  As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States.  *See id.*  Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010.  *See id.*  More recently, as Lead Counsel on behalf

13

of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class.  *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Purrington's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute this Action effectively and expeditiously.  Thus, the Court may be assured that by approving Purrington's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

**CONCLUSION**

For the foregoing reasons, Purrington respectfully requests that the Court issue an Order: (1) appointing Purrington as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz as Lead Counsel for the Class.

Dated:  April 24, 2026

Respectfully submitted,

POMERANTZ LLP

*/s/ J. Alexander Hood II*
J. Alexander Hood II
Jeremy A. Lieberman
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Robert Purrington and*
*Proposed Lead Counsel for the Class*

14

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Robert Purrington, certifies that this brief contains 3,983 words, which complies with the word limit of Local Civil Rule 7.1(c).

Executed on April 24, 2026.

*/s/ J. Alexander Hood II*
J. Alexander Hood II

15